# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SANDY WINNER and LAURA BASTON, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR BRUCE RAUNER, in his official capacity as Governor of Illinois, and SEIU HEALTHCARE ILLINOIS & INDIANA,<br><br>Defendants. | No. 15 CV 7213<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sandy Winner and Laura Baston are providers of day care home services in Illinois who chose not to join the union, SEIU Local No. 880, but who nonetheless paid the required fair-share fee to SEIU for the union's collective bargaining efforts. They bring this lawsuit seeking the return of all fair-share fees previously paid without consent and to enforce the Supreme Court's holding in *Harris v. Quinn*, 134 S.Ct. 2618 (2014). Count I against SEIU is for damages for violation of plaintiffs' rights under 42 U.S.C. § 1983. Counts II and III against SEIU are for unjust enrichment and money had and received. Count IV against SEIU and the state is for a permanent injunction and declaratory relief for violation of plaintiffs' rights under § 1983. Both defendants moved for judgment on the pleadings. Both motions are granted.

I.   **Legal Standards**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The moving party must prove there are no material issues of fact that need to be resolved. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The court may grant a Rule 12(c) motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support her claim for relief. *Id.* (quotation omitted). To make this determination, the court accepts all well-pleaded facts as true and draws all inferences in favor of the plaintiff. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). The court only considers the complaint, the answer, any attached written instruments that the complaint refers to and that are central to plaintiff's claim, and any information that is subject to judicial notice. Fed. R. Civ. P. 10(c); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993), *overruled on other grounds*; *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

II.   **Facts**

The Illinois Department of Human Services administers an affordable child-care program for low-income, working families. [24] ¶¶ 11–12;[1] 305 ILCS 5/9A-11; 89 Ill. Admin. Code § 50.210 *et seq*. Winner began working as a day care home provider for this program in approximately 2000, and Baston began in approximately 1989. [24] ¶¶ 7–8. As of the date the complaint was filed, both

---

[1] Bracketed numbers refer to entries on the district court docket.

Winner and Baston still worked as providers. *Id*. Providers are employed by families who participate in the program, not by the state. [24] ¶¶ 13, 15, 18.

On February 18, 2005, the governor of Illinois issued the "Executive Order On Collective Negotiation by Day Care Home Providers." [24] ¶¶ 21–22; [24-1] at 1–3. It explained that since the state does not hire, supervise, or terminate providers, they are not state employees and consequently, providers are not eligible to receive statutory benefits. [24] ¶ 24. It also provided: "The State shall recognize a representative […], as the exclusive representative of day care home providers." *Id*. The Executive Order was codified by Public Act 94-320, which amended the definition of "public employee" in 305 ILCS 5/9A-11 of the Illinois Public Aid Code, Child Care to include providers. [24] ¶¶ 25, 30; [24-2] at 1–8. The amendment, like the Executive Order, did not reference fair-share fees. *Id*. Before and after the amendment, 5 ILCS 315/3 included a definition for fair-share agreements:

> 'Fair share agreement' means an agreement between the employer and an employee organization under which all or any of the employees in a collective bargaining unit are required to pay their proportionate share of the costs of the collective bargaining process, contract administration, and pursuing matters affecting wages, hours, and other conditions of employment, but not to exceed the amount of dues uniformly required of members. The amount certified by the exclusive representative shall not include any fees for contributions related to the election or support of any candidate for political office. Nothing in this subsection (g) shall preclude an employee from making voluntary political contributions in conjunction with his or her fair share payment.

Under the Executive Order, providers were required to elect, by a majority, an exclusive representative with whom the state would engage in collective

negotiations "concerning all terms and conditions of the provision of services for day care home providers under the State's child care assistance program." [24-1] at 2–3. SEIU became the exclusive representative of providers on July 15, 2005. [24] ¶ 31; [24-6] at 2. Baston received a notice addressed to home child-care providers who were not members of SEIU Local 880. [24] ¶ 34; [24-3] at 1–3. The notice informed providers that SEIU negotiated a comprehensive collective bargaining agreement "establishing the rates, benefits and working conditions of all Home Child Care Providers." [24-3] at 1. It also explained that the collective bargaining agreement required all providers to pay a fair-share fee, which covered each provider's proportionate share of the costs SEIU incurred while representing providers in these endeavors. *Id*. The collective bargaining agreement was between SEIU, the Illinois Department of Central Management Services, and the Department of Human Services; it was effective from July 1, 2013 through June 30, 2015. [24] ¶ 54; [24-6] at 1–23.

Baston received a letter from the Illinois Department of Human Services dated July 28, 2014. [24] ¶ 66; [24-7]. It briefly explained the Supreme Court's holding in *Harris*, which found the collection of compulsory fair-share fees from in-home-care personal assistants, who were not full-fledged state employees, unconstitutional. *Id*. The letter informed Baston that defendants would no longer collect fair-share fees from providers for services it conducted after July 1, 2014, unless the provider has agreed to full union membership. *Id*.

During their employment, neither Winner nor Baston agreed to full union membership with SEIU. [24] ¶¶ 7–8. Nevertheless, both Winner and Baston paid fair-share fees to SEIU for almost ten years. [24] ¶ 3.

**III. Analysis**

**A. Count IV for Injunctive and Declaratory Relief Does not Present a Justiciable Controversy**

Injunctive and declaratory judgment remedies are discretionary. *Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711, 712 (7th Cir. 1975) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)). Premature adjudication caused by meddling in abstract disagreements or interfering in agency decision-making should be avoided, as it wastes judicial resources. *Abbott*, 387 U.S. at 148–49. Courts grant such remedies only when the controversy is ripe for judicial resolution. *Alcan Aluminium Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1299 (7th Cir. 1984) (citing *Abbott*, 387 U.S. at 148).

Both the governor and the union contend there is no justiciable controversy here because the issues being litigated are not ripe. The governor notes that there is neither evidence nor a plausible allegation that defendants are collecting fair-share fees from plaintiffs currently, or that defendants will collect fair-share fees from plaintiffs in the future. Without a current or future threat of injury, the state insists, this case cannot be ripe. Similarly, SEIU emphasizes that it stopped collecting fair-share fees after the Supreme Court decided *Harris*, which was approximately one year before plaintiffs filed this lawsuit. It is SEIU's position that the past collection of fair-share fees from plaintiffs does not create a live controversy

5

for injunctive relief, citing *Schirmer v. Nagode*, 621 F.3d 581, 585–86 (7th Cir. 2010).

Plaintiffs respond by saying the justiciable controversy is not over whether they are currently forced to pay fair-share fees pursuant to the collective bargaining agreement; instead, it is over whether plaintiffs and similarly situated child-care providers are covered by *Harris*. They identify the letter, the Illinois Public Labor Relations Act, and the CBA as evidence of a live controversy on this point.[2] To warrant injunctive or declaratory relief, the potential for future injury need not be certain, but the risk of harm occurring must be substantial. *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1019–20 (7th Cir. 2016) (citing *Am. Bottom Conservancy v. United States Army Corps of Engineers*, 650 F.3d 652, 658 (7th Cir. 2011); *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir.2010)).

### 1. *The July 28, 2014 Letter*

The letter states in relevant part: "Although [*Harris*] was limited to the Personal Assistants and does not directly impact child care providers such as yourself, the State and SEIU have agreed that this ruling will be applied to child care providers as well." [24-7] at 1. Plaintiffs interpret the letter to mean that the state does not think *Harris* applies to plaintiffs. Since the letter was the "only communication" the state made to plaintiffs about *Harris*, plaintiffs believe there is

---

[2] Plaintiffs also identified the Executive Order, but it contributes little to the justiciability analysis. It supports the argument that providers are not full-fledged state employees, but this is not an argument that defendants contest. Moreover, it does not advance plaintiffs' arguments because it does not demonstrate immediate or probable harm to plaintiffs by defendants.

6

uncertainty about their obligation to pay fair-share fees in the future, which makes their claims ripe for a declaratory judgment.

Both the governor and the union argue that the letter's language shows there is no justiciable controversy. They read the letter as conceding that plaintiffs—like the personal assistants in *Harris*—are not "full-fledged state employees," but also asserting a correct statement of law that *Harris* only decided the question presented as to personal assistants and therefore, it does not *directly* apply to plaintiffs. Defendants emphasize the sentence in the letter that explains that the state and SEIU will apply *Harris* to plaintiffs going forward, regardless of the decision's actual limitations. As such, defendants conclude plaintiffs' claims are not ripe and they see no need for prospective relief on such claims.

The letter is clear. The state and SEIU have elected to apply *Harris* to plaintiffs. This decision was not phrased as a temporary program, a trial run, or something with an expiration date. Rather, the letter used language like "from July and beyond" and "will no longer" in reference to this plan; therefore, the sensible interpretation is that the state's intention to apply *Harris* to plaintiffs is the new status quo and will be the status quo for the foreseeable future. [24-7] at 1. Plaintiffs' interpretation of the letter's language is not persuasive. Their belief of future harm is too hypothetical to support a declaratory judgment or injunctive relief.

### 2. *The Illinois Public Labor Relations Act*

The Illinois Public Labor Relations Act generally authorizes representatives to enter into collective bargaining agreements with fair-share provisions. 5 ILCS

7

315/6. It provides that collective bargaining agreements: "may include [...] a provision requiring employees covered by the agreement who are not members of the organization to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment, as defined in Section 3 (g), but not to exceed the amount of dues uniformly required of members." 5 ILCS 316/6(e). It is plaintiffs' position that unless and until this statute is amended, altered, or repealed, it gives defendants carte blanche to resume collecting fair-share fees in the future.

The statute remains in effect only within the confines permitted by *Harris*. With respect to child-care providers like plaintiffs, who are not full-fledged state employees, the governor refers back to the letter in which the state and SEIU explained their intention to apply *Harris* to plaintiffs. The governor's argument is that based on the letter, defendants treat 5 ILCS 316/6(e) as unconstitutional if applied to plaintiffs. Although amending or repealing the statute are other means to the same end, the fact that the state chose a different course of action does not create a live controversy here, because that choice does not present a realistic threat of harm in the near future.

Although the commitment the state and SEIU made in the letter to plaintiffs does not have the force of law, statutory amendment also would not guarantee permanency or consistency. Legislation is subject to change, as are commitments between parties. Injuries that may come from changes that could hypothetically occur in the future are not justiciable. More than one year before this litigation was

8

filed, defendants represented that it would treat 5 ILCS 315/6(e) as unconstitutional as applied to plaintiffs. There is no allegation that defendants have resumed collecting fair-share fees from plaintiffs during that interim period. The possibility remains that defendants could change positions in the future, but that possibility is too speculative to constitute a live controversy.

### 3. The Collective Bargaining Agreement

The defendants note that the fair-share provision was removed from the parties' collective bargaining agreement after *Harris*.[3] Plaintiffs attempt to minimize the importance of this fact by pointing to the agreement's June 30, 2015 expiration date. According to plaintiffs, nothing precludes defendants from collecting fair-share fees in the future because they have not come forward with proof that the current collective bargaining agreement does not include a fair-share provision. By the same token, though, there is no allegation of an existing collective bargaining agreement that *does* include a fair-share provision. As SEIU argues, fair-share fees may only be collected if the relevant agreement expressly includes a fair-share provision. 5 ILCS 315/6(e)–(f). Since that provision was removed from the last operative collective bargaining agreement between the parties, and since there

---

[3] Plaintiffs argue that the amendment to the collective bargaining agreement cannot be considered because it is neither referred to in the complaint nor central to its claims. Although plaintiffs do not explicitly refer to the amendment in their complaint, it is referenced indirectly at least by plaintiffs' assertion that "the State and SEIU have done nothing to remedy their past violation of Providers' First Amendment rights." [24] ¶ 3. More importantly, "the district court ha[s] not only the right, but the duty to look beyond the allegations of the complaint to determine that it ha[s] jurisdiction to hear the […] claim." *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002). Both defendants have challenged the ripeness of this lawsuit; as such, they challenge this court's jurisdiction.

9

are no allegations that a subsequent agreement was reached to reinstate the fair-share fee provision, defendants have no legal basis for collecting fair-share fees from plaintiffs. There is no controversy of sufficient immediacy or reality to be justiciable here.

Plaintiffs' claims for prospective or declaratory relief are not ripe for litigation. They are not based on actual or concrete conflicts, but on a dispute that hypothetically may occur sometime in the not immediate future. Accordingly, the state's motion for judgment on the pleadings is granted and SEIU's motion for judgment on the pleadings, to the extent it makes justiciability arguments concerning injunctive and declaratory relief, is also granted.

### B. Plaintiffs May Not Collect Damages Under § 1983 Because SEIU Acted in Good Faith

SEIU argues that plaintiffs' claim for retrospective monetary damages under § 1983 fails as a matter of law because: (1) it has a "good faith" defense for the fees it collected before *Harris*, and (2) it stopped collecting fair-share fees after *Harris*. The legal landscape before *Harris* permitted unions to collect fair-share fees. *See, e.g.*, *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977); *Harris v. Quinn*, 656 F.3d 692, 697 (7th Cir. 2011), *aff'd in part, rev'd in part and remanded*, 134 S. Ct. 2618 (2014). Relying on this precedent, the Illinois legislature enacted the Public Labor Relations Act, which authorized the collection of fair-share fees. 5 ILCS 315/6. SEIU entered into a collective bargaining agreement pursuant to this validly enacted statute, and proceeded to collect fair-share fees from providers. Plaintiffs assert that the Seventh Circuit does not recognize the good-faith defense. Even if it

did, plaintiffs contend that this affirmative defense cannot be resolved on a motion for judgment on the pleadings; since the complaint does not allege facts to satisfy the elements of this defense, plaintiffs argue SEIU cannot carry its burden of pleading and proving it. Specifically, plaintiffs argue that the complaint does not establish that SEIU had a subjective belief that the Public Labor Relations Act was constitutional, or that its belief was objectively reasonable, which are required elements for good faith.

The Seventh Circuit has not rejected or recognized the good-faith defense. It simply has yet to consider the defense. Every federal appellate court that has considered the good-faith defense, though, has found that it exists for private parties. *See Pinsky v. Duncan*, 79 F.3d 306, 311–12 (2d Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275–78 (3d Cir. 1994); *Wyatt v. Cole*, 994 F.2d 1113, 1118–21 (5th Cir. 1993); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698–99 (6th Cir. 1996); *Clement v. City of Glendale*, 518 F.3d 1090, 1096–97 (9th Cir. 2008). Like all affirmative defenses, the good-faith defense can be resolved on the pleadings, so long as the complaint includes the set of facts necessary to satisfy its elements.[4] *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

---

[4] *See also* Black's Law Dictionary 482 (10th ed. 2014) (defining "affirmative defense" as: "A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.")

Here, the complaint states that SEIU collected fair-share fees until the Supreme Court issued *Harris*. That decision, along with its procedural history, makes clear that the Supreme Court had previously authorized fair-share provisions in the public sector and that the Supreme Court had never invalidated a statute authorizing the same before *Harris*. It was not reasonably apparent to SEIU that the collection of fair-share fees under this program, even if it was "a very substantial expansion of *Abood*'s reach," would be unconstitutional. *See Harris*, 134 S. Ct. at 2634; *Harris*, 656 F.3d at 699. This is true even though, as plaintiffs point out ([51] at 16), SEIU is a "sophisticated entity" with "top-notch legal advice," and even if SEIU participated in drafting the Executive Order, legislation, and regulations that authorized the collection of fair-share fees in Illinois. "[E]ven the clarity of hindsight is not persuasive that the constitutional resolution […] could be predicted with assurance sufficient to undermine […] reliance on [the challenged law]." *Lemon v. Kurtzman*, 411 U.S. 192, 207 (1973). SEIU's reliance on relevant precedent was reasonable. Any subjective belief it could have had that the precedent was wrongly decided and should be overturned would have amounted to telepathy. Therefore, the pleadings are a sufficient basis to conclude that the affirmative good-faith defense applies to SEIU as a matter of law.

Amici argue that the violation of plaintiffs' § 1983 rights was complete at the precise moment when plaintiffs paid compulsory fair-share fees; thus, it is immaterial whether SEIU acted in good or bad faith.[5] Additionally, amici

---

[5] As I have noted elsewhere, the First Amendment injury in these cases depends on the plaintiff's subjective opposition to the compelled payment, so I do not agree that taking the

distinguish between a "defense" and an "immunity" under § 1983 and argue that *Wyatt v. Cole*, 504 U.S. 158 (1992), held that private defendants do not enjoy an immunity under § 1983. As to the good-faith defense, amici contend that it is only available when motive is material to the analogous common-law claim, which courts consider when determining the elements for a constitutional claim under § 1983. Finally, the amici warn against carving out an exemption to § 1983 based on the mere sentiment that it is unfair to hold private defendants liable where public defendants may be immune from suit.

But this sentiment is the source of the doctrine—and was a limiting principle invoked by the Court when extending § 1983 liability to private parties. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n.23 (1982). Amici's limiting principles of scienter or motive are not consistent with the Supreme Court's approach because they would still leave private parties exposed to a damages verdict for relying on seemingly valid state laws that were later held to be unconstitutional. The Court made clear that the reasons for granting qualified immunity to public officials did not extend to private parties, but the Court did not intend to leave private parties without recourse for good-faith reliance on presumptively constitutional state statutes. *Wyatt*, 504 U.S. at 168–69 (1992) (citing *Lugar*, 457 U.S. 922). Justice Kennedy's concurrence in *Wyatt* noted that it would be consistent with the common law to exonerate a private defendant from liability if the defendant relied on a presumptively valid statute. *Wyatt*, 504 U.S. at 174 (Kennedy, J., concurring). The

---

fees without consent establishes the entirety of the constitutional tort. *Riffey v. Rauner*, No. 10 CV 02477, 2016 WL 3165725, at *3 (N.D. Ill. June 7, 2016).

13

*Wyatt* majority did not foreclose a good-faith defense. Its application to the First Amendment claim for compelled subsidization of speech presented here would not create a new exemption to § 1983, it would simply adopt the pre-existing limits to the relief available. *See also Jarvis v. Cuomo*, No. 16-441-CV, 2016 WL 4821029, at *2 (2d Cir. Sept. 12, 2016) (defendants not liable for damages stemming from the pre-*Harris* collection of fair-share fees) (non-precedential summary order).

SEIU's motion for judgment on the pleadings is granted as to Count I.

### IV. SEIU's Good Faith Overcomes Plaintiffs' State-Law Claims in Counts II and III

Unjust enrichment and money had and received are state common-law claims, which turn on equitable principles. For unjust enrichment, plaintiffs must prove that defendants retained a benefit to the plaintiffs' detriment, in violation of principles of equity and good conscience. *HPI Health Care Servs. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160 (1989). For money had and received, plaintiffs must prove that defendants received money, which in good conscience, belongs to plaintiffs. *Bd. of Highway Comm'rs, Bloomington Twp., v. City of Bloomington*, 253 Ill. 164, 174 (1911).

Plaintiffs argue that when both parties are "innocent," courts must decide which of the two parties most directly contributed to the loss; in turn, the court should assign that party to bear the loss. But, as SEIU emphasizes, Illinois common-law principles uniformly permit individuals to rely on validly enacted statutes as presumptively constitutional. *See, e.g., Bd. of Comm'rs of Wood Dale Pub. Library Dist. v. Du Page Cty.*, 103 Ill.2d 422, 431–32 (1984) (declining to order

14

restitution where a party relied on a statute that was later found unconstitutional, due to equitable principles) (citing *Lemon II*, 411 U.S. at 203). In *Wood Dale*, the Illinois Supreme Court explained that the county treasurer retained funds in reliance on a statute and that it was not until a new decision issued that it was apparent that such reliance was improper. *Id.* at 431. Accordingly, the Illinois Supreme Court held that the newly announced rule should only be applied prospectively, from the date of the relevant decision forward. *Id.* at 431–432.

Both the collective bargaining agreement and the Public Labor Relations Act, before *Harris*, made clear that the fees would be deducted automatically from plaintiffs' pay; plaintiffs had no reason to expect that the fees belonged to them. Additionally, plaintiffs received collective bargaining services from SEIU as a result of those fees;[6] it cannot be said that SEIU kept the funds to plaintiffs' detriment. According to SEIU, if plaintiffs were to receive those fees now, it would result in a windfall to plaintiffs and a punishment to SEIU for acting in accordance with state law, which would be contrary to the equitable norms that give rise to these types of claims. I agree. The Seventh Circuit's discussion of restitution in *Gilpin v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO*, 875 F.2d 1310, 1316 (7th Cir. 1989), is instructive here—a refund of fees would not be consistent with the equitable remedy.

---

[6] Plaintiffs take issue with this statement, as the complaint does not contain allegations of benefits they received from SEIU. That the complaint does not explicitly refer to a benefit, though, does not preclude defendant from making this statement. The complaint refers to the collective bargaining agreement, which describes what plaintiffs' fair-share fees will go toward, including negotiated pay raises for plaintiffs and other related benefits. This is sufficient support from the pleadings to make this statement.

Plaintiffs argue that *Harris* put SEIU on notice that collecting fair-share fees was improper and the fact that SEIU "is stubbornly holding onto money which the Supreme Court told it was seized in violation of Plaintiffs' constitutional rights is the essence of **bad faith**." [51] at 18 (emphasis original). This argument is flawed to the extent it argues that SEIU should have known, before *Harris*, that collecting fair-share fees from individuals who were not full-fledged state employees was unconstitutional. As discussed above, SEIU did not act with an understanding that its conduct was improper. To the extent this argument is limited to the fees collected for services conducted before July 1, 2014, but processed after July 1, 2014, SEIU's position was reasonable given the reliance interests involved. *See*, *e.g.*, *Lemon II*, 411 U.S. at 203, 206–207 (permitting schools to make payments to religious institutions, even after the Supreme Court invalidated statute, for services those schools had already conducted because of reliance interests). No dispute of material fact needs to be resolved; SEIU's reliance on the presumptively valid Public Labor Relations Act and related collective bargaining agreement precludes plaintiffs' equitable claims for unjust enrichment and money had and received. SEIU's motion for judgment on the pleadings is granted as to Counts II and III.

## V. Conclusion

For the reasons discussed above, defendants' motions for judgment on the pleadings, [41] and [46], are granted. Enter judgment in favor of defendants and terminate civil case.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: 12/20/2016